UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRI KOSCHNICK AND JOY BUCHMAN,

 Plaintiffs,

v.

TONY EVERS, DAN HERETH, JESSICA
BOWERS, CHRISTOPHER J. WEBSTER,
JOSHUA R. LEE, C. TERRANCE ERICKSON,
ANN GLAVAN, SHAWNA R. HANSEN, SHENG
LEE YANG, MARIETTA LUSTER, NICK M.
RAEF, ANDREA L. SIMON, TIM R. STRAIT, and
PATRICK STUMBRAS, each in their official
capacity,

 Defendants.

## VERIFIED COMPLAINT

Plaintiffs Terri Koschnick and Joy Buchman, by their undersigned attorneys at the Wisconsin Institute for Law & Liberty, hereby allege as follows:

### INTRODUCTION

1. "[T]he spoken word is perhaps the quintessential form of protected speech." *Chiles v. Salazar*, 146 S. Ct. 1010, 1023 (2026). In a recent 8-1 decision, the United States Supreme Court reaffirmed this fundamental principle of our constitutional order in holding that a Colorado state statute dictating what counselors may say when talking to clients amounted to viewpoint discrimination, effectively in violation of the First Amendment. *See id.* at 1021, 1029.

2. Specifically, the statute at issue (hereinafter the "Colorado law") placed restrictions on talk therapy relating to gender identity and sexual orientation. The Colorado law, which broadly prohibited licensed counselors from providing "conversion therapy" to minors, explicitly allowed counselors to speak if their verbal message provided "[a]cceptance, support, and understanding for … identity exploration and development." *Id.* at 1018 (quoting Colo. Rev. Stat. §§ 12-245-224(1)(t)(V); 12-245-202(3.5)(b)(I) (2025)). However, the Colorado law silenced counselors if their verbal message "attempt[ed] … to change an individual's sexual orientation or gender identity" or to "change behaviors or gender expressions." *Chiles*, 146 S. Ct. at 1018 (quoting Colo. Rev. Stat. § 12-245-202(3.5)(a)).

3. At times, the government-approved perspectives conflicted with—and trumped—a patient's own personal goals for seeking counseling. The plaintiff, a Christian counselor in Colorado (hereinafter the "Colorado counselor") who provides talk therapy to adults and children alike, explained that she meets new patients where they are, rather than counseling clients with her own "predetermined goals." *See Chiles*, 146 S. Ct. at 1017. Some clients "are content with" their sexual orientation and gender identity, only seeking help to navigate "social issues" or "family relationships." *Id.* Other clients seek help specifically to "reduce or eliminate unwanted attractions, change sexual behaviors, or grow in the experience of harmony with [their] bod[ies]." *Id.* However, the Colorado law prevented the Christian counselor from speaking to these latter clients with words to help achieve their goals. In other words, while she could "affirm" a client seeking to undergo a gender

transition, it was illegal for her to help a client seeking to feel more alignment between his or her gender identity and biological sex.

4.     Colorado insisted that its policing of perspectives was justified as professional "conduct," only incidentally regulating speech. *See id.* at 1023. The Supreme Court was not persuaded. In holding that the Colorado law was subject to strict scrutiny and constituted viewpoint discrimination under the First Amendment, the Court explained that "speech does not become conduct just because the State may call it that," as "[t]he First Amendment is no word game." *Id.* As applied to the Colorado counselor, the Court pointed out that the Colorado law not only regulated the content or subject matter of her speech, but went "a step further, prescribing what views she may and may not express." *Id.* at 1024. And "when the government seeks not just to restrict speech based on its subject matter, but also seeks to dictate what particular 'opinion or perspective' individuals may express on that subject, 'the violation of the First Amendment is all the more blatant.'" *Id.* at 1021 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

5.     Wisconsin law contains a regulation that is materially identical to the Colorado law. *See* Wis. Admin. Code § MPSW 20.02(25) (the "Rule"). For the same reasons described above, the Rule is unconstitutional under the First Amendment as impermissible viewpoint discrimination. Nevertheless, despite the Supreme Court's recent ruling in *Chiles*, Defendants have shown no signs of ceasing enforcement and repealing this unconstitutional Rule.

6. In addition to constituting viewpoint discrimination in violation of the First Amendment, the Rule also violates federal free exercise protections and is unlawfully vague.

7. Terri Koschnick and Joy Buchman, each of whom are Wisconsin-licensed mental health professionals regulated by and harmed by the Rule, bring this action to obtain a declaration that the Rule is unconstitutional and an injunction barring its enforcement.

## PARTIES

8. Plaintiff Terri Koschnick, MS, LMFT, is a licensed marriage and family therapist and has practiced as a Christian counselor since 2000. Ms. Koschnick only provides talk therapy to patients, and in doing so, integrates her clinical training with her Christian faith. Her main areas of focus include treating trauma, anxiety, and depression, and she also has extensive experience in counseling individuals who are or have been in abusive relationships. She earned her master's degree in counseling from the University of Wisconsin-Whitewater and her bachelor's degree from the University of Wisconsin-Stevens Point. Ms. Koschnick holds a Wisconsin Marriage and Family Therapy license issued by the Department of Safety and Professional Services (DSPS). She is a citizen and resident of the United States, and she both practices and resides in Oconomowoc, Wisconsin.

9. Plaintiff Joy Buchman, MS, LPC, NCC, is a licensed professional counselor and the owner of Kinsman Redeemer Counseling Center, LLC ("Kinsman") located in Onalaska, Wisconsin. At Kinsman, the mission is as follows:

- 4 -

> "Our goal is to help you build resilience, develop emotional regulation, and experience personal growth, all through a therapeutic process rooted in evidence-based techniques and Christian values. With a focus on meeting each client where they are, we embrace a relational, individualized approach, allowing you to feel seen, heard, and understood."

Ms. Buchman only provides talk therapy and specializes in addressing childhood trauma in both children and adults, utilizing evidence-based therapeutic approaches rooted in Christian values to promote healing and growth. She has a master's degree in mental health counseling and a bachelor's degree in clinical psychology from Winona State University, as well as a certificate in mental health counseling from the University of Wisconsin-Madison. Ms. Buchman holds a Wisconsin Professional Counselor license issued by DSPS, is a National Certified Counselor, and is affiliated with the American Association of Christian Counselors. She is a citizen and resident of the United States, and resides in La Crosse, Wisconsin.

10.     Defendant Tony Evers is the Governor of the State of Wisconsin. In addition to overseeing DSPS, Governor Evers signed a letter dated May 5, 2026 (*see infra* ¶ 23 and Exhibit B) addressed to undersigned counsel and in response to the Demand Letter. In his own letter, Governor Evers declared that "my administration has no intention of repealing" the Rule and directed his administration to continue enforcing the Rule. Defendant Evers is sued in his official capacity.

11.     Defendant Dan Hereth is the Secretary of DSPS, which accepts, screens, investigates, and handles monitoring and enforcement of complaints related to the Rule. He is sued in his official capacity.

12.     Defendants Jessica Bowers, Christopher J. Webster, Joshua R. Lee, C. Terrance Erickson, Ann Glavan, Shawna R. Hansen, Sheng Lee Yang, Marietta Luster, Nick M. Raef, Andrea L. Simon, Tim R. Strait, and Patrick Stumbras, are members of the Wisconsin Marriage and Family Therapy, Professional Counseling, and Social Work Examining Board (the "Board"). The Board promulgates code, adjudicates violations, and issues disciplinary orders related to the Rule. The Board members are each sued in their official capacities.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

14.     Venue is appropriate in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims have occurred in this district.

## STATEMENT OF FACTS

15.     Plaintiff Koschnick's Wisconsin Marriage and Family Therapist license and Plaintiff Buchman's Wisconsin Professional Counselor license are issued by DSPS, which oversees the Board.

16.     Board licensees include thousands of other Wisconsin professional counselors, marriage and family therapists, and social workers.

17.     The Rule, found in Wis. Admin. Code § MPSW 20.02(25) and which applies to Board licensees, declares it "unprofessional conduct" for any licensee to:

> "Employ[] or promot[e] any intervention or method that has the purpose of attempting to change a person's sexual orientation or gender identity, including attempting to change behaviors or expressions of self or to

reduce sexual or romantic attractions or feelings toward individuals of the same gender."

18. The Rule includes select exceptions to this prohibition, to the extent such speech "provides a client with acceptance, support, understanding, or that facilitates a client's coping, social, support, and identity exploration or development," as well as select interventions:

> "This does not include counseling that assists a client who is seeking to undergo a gender transition or who is in the process of undergoing a gender transition, or counseling that provides a client with acceptance, support, understanding, or that facilitates a client's coping, social support, and identity exploration or development. Nor does it include counseling in the form of sexual orientation-neutral or gender identity-neutral interventions provided for the purpose of preventing or addressing unlawful conduct or unsafe sexual practices, so long as the counseling is not provided for the purpose of attempting to change the client's sexual orientation or gender identity."

19. The Rule does not define the broad concepts of "sexual orientation" or "gender identity." The Rule does not define when a person is "undergoing a gender transition," let alone when one is "seeking" to undergo a gender transition versus "in the process" of doing so. The Rule does not define any portion of other relevant phrases, such as "identity exploration or development."

20. Nevertheless, violations of the Rule may subject licensees to a Board investigation and substantial consequences, including but not limited to reprimand or a denial, limitation, suspension, or revocation of a Board licensee's professional credential. *See* Wis. Stat. § 457.26; § MPSW 20.02.

21. On April 14, 2026, the undersigned counsel sent a formal demand letter (the "Demand Letter") to Defendants Hereth and Bowers, along with Governor Tony

Evers and Attorney General Josh Kaul. The Demand Letter notified all recipients that the Rule is unconstitutional and unenforceable, and included a courtesy copy of the *Chiles* decision. The Demand Letter provided a visual comparison of the Rule and the materially identical Colorado law effectively struck down. The Demand Letter is attached as Exhibit A.

22. Because the Rule is unconstitutional and unenforceable, the Demand Letter required: (1) written confirmation within 7 days of receipt that DSPS and the Board will not enforce the Rule; (2) initiation of formal repeal proceedings under Wis. Stat. Ch. 227, within thirty (30) days of receipt of the letter, with a commitment to expedite the repeal to the fullest extent permitted by law; and (3) notification to all current licensees that the Rule will not be enforced.

23. On May 6, 2026, the undersigned counsel received a letter dated May 5, 2026, from Defendant Governor Evers, cc'ing Attorney General Kaul and Defendants Hereth and Bowers, confirming receipt of the Demand Letter. *See* Exhibit B. Among other things, such as inflammatory, baseless accusations that an "important goal" for the Wisconsin Institute for Law & Liberty is "bullying LGBTQ kids and Wisconsinites," Defendant Governor Evers declared that "my administration has no intention of repealing" the Rule and that the Board "will maintain the rule and continue to enforce its valid applications." *See id*.

24. Thus, to date, Defendants have not taken—and appear to have no intention of taking—any of the other required actions to cease enforcement of and repeal of this unconstitutional Rule.

# CAUSES OF ACTION

## CLAIM ONE

**42 U.S.C. § 1983 – Violation of the First and Fourteenth Amendments to the United States Constitution – Speech Clauses**

25.     Plaintiffs reallege and incorporate by reference all preceding allegations of the Verified Complaint.

26.     The Civil Rights Act of 1871 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," deprives any "citizen of the United States or other person" of any rights "secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

27.      The First Amendment protects the inalienable right of every individual to decide for himself "how best to speak." *Riley v. National Federation of the Blind of N. C., Inc.*, 487 U.S. 781, 791 (1988).

28.     Laws regulating speech based on its subject matter or "communicative content" are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

29.     When laws dictate what particular "opinion or perspective" individuals may express on that subject, "the violation of the First Amendment is all the more blatant." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

30.     These clauses apply to the States via the Fourteenth Amendment. *See, e.g., Sch. Dist. Of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 215 (1963).

31. In providing talk therapy, all each Plaintiff does is speak with clients; neither Plaintiff prescribes medication, uses medical devices, or employs any physical methods.

32. Plaintiffs consider their counseling practice to be an exercise of their faith, and they do not provide verbal advice that conflicts with their faith.

33. As counselors whose professional mission is inextricably tied to their faith, Plaintiffs' approach to talk therapy may at times conflict with the Rule.

34. Many patients have specifically sought out, and continue to seek out, Plaintiffs' faith-based counseling, including to obtain advice on issues of sexual orientation and gender identity.

35. Some such patients approach counseling with a personal desire to align their gender identity with their biological sex. Some such patients approach counseling with a personal desire to make changes relating to their sexual orientation or gender identity.

36. However, the Rule prevents Plaintiffs from providing verbal advice in accordance with their sincerely-held religious beliefs in helping these patients specifically seeking to align their gender identity with their biological sex or to make changes relating to their sexual orientation or expression.

37. Plaintiffs want and intend to provide faith-based counseling to patients in the future on issues of sexual orientation or expression, including through providing verbal advice that would violate the Rule.

38. In enforcing the Rule, Defendants discriminate against Plaintiffs based on the viewpoint of their respective speech.

39. Defendants prescribe what views Plaintiffs may and may not express.

40. Defendants have not provided any reason for the Rule to satisfy strict scrutiny or any other exception to the Free Speech Clause of the First Amendment.

41. The Rule is causing continuing and substantial harm to Plaintiffs by preventing them from counseling in a manner consistent with their respective professional, faith-informed missions.

## CLAIM TWO

### 42. U.S.C. § 1983 – Violation of the First and Fourteenth Amendments to the United States Constitution – Religion Clauses

42. Plaintiffs reallege and incorporate by reference all preceding allegations of the Verified Complaint.

43. The First Amendment to the United States Constitution provides in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof …." U.S. Const. amend. I.

44. These clauses apply to the States via the Fourteenth Amendment. *See, e.g., Sch. Dist. Of Abington*, 374 U.S. at 215.

45. Plaintiffs consider their counseling practice to be an exercise of their faith, and they do not provide clinical advice that conflicts with their faith.

46. As counselors whose professional mission is inextricably tied to their faith, Plaintiffs' approach to talk therapy may at times conflict with the Rule.

47. Many patients have specifically sought out, and continue to seek out, Plaintiffs' faith-based counseling, including on issues of sexual orientation and gender identity.

48. Some such patients approach counseling with a personal desire to align their gender identity with their biological sex. Some such patients approach counseling with a personal desire to make changes relating to their sexual orientation or gender identity.

49. By providing verbal advice in accordance with their sincerely-held religious beliefs, including to assist such patients in achieving such goals, Plaintiffs would violate the Rule, thereby risking substantial penalty and their respective, continued licensure.

50. Plaintiffs want and intend to provide faith-based counseling to patients in the future on issues of sexual orientation or expression, including through providing verbal advice that would violate the Rule.

51. Accordingly, the Rule substantially burdens Plaintiffs' sincerely-held religious beliefs and impermissibly targets their religious views—and the views of all those among the thousands of Board-regulated professionals—who do not share the Defendants' viewpoints on sexual orientation and gender identity.

52. The Rule thus interferes with Plaintiffs' ability to integrate their sincerely-held religious beliefs with their professional work in providing verbal, faith-based counseling. Plaintiffs are each faced with a choice: regurgitate the government-approved viewpoint and violate her conscience, or risk violating Wisconsin state law.

53. In enforcing select viewpoints relating to sexuality and gender identity, the Rule respects an establishment of religion. Yet the Rule neither furthers a compelling governmental interest nor is narrowly tailored to achieve such an interest.

54. The Rule is unconstitutional and void.

55. The Rule is causing continuing and substantial harm to Plaintiffs by preventing them from counseling in a manner consistent with their professional, faith-based missions.

## CLAIM THREE

### 42 U.S.C. § 1983 – Violation of the Fourteenth Amendment to the United States Constitution – Vagueness

56. Plaintiffs reallege and incorporate by reference all preceding allegations of the Verified Complaint.

57. The Fourteenth Amendment prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law."

58. Due process of law requires that when a State passes a law purporting to prohibit certain speech, it must provide adequate notice of what speech is actually unlawful.

59. In the case of the Rule, this adequate notice requirement must be stringently applied because the Rule interferes with the right of free speech.

60. Substantial consequences attach to violations of the Rule.

61. Nevertheless, the Rule is so vaguely drafted that it violates fundamental due process.

62. For example, the Rule prohibits "any intervention or method … attempting to change behaviors or expression of self" but permits "counseling that assists" a client "seeking" or "in the process of undergoing a gender transition" or "that facilitates a client's … identity exploration or development." *See* § MPSW 20.02(25). It is unclear how that language applies to talk therapy rendered to a biological male who is considering, but not yet certain, whether he wants to transition to a female gender identity, or vice versa, with a biological female considering whether she wants to transition to a male gender identity. The Rule likewise fails to adequately define other relevant terms, such as what it means to "facilitate" a client's "coping" or "social support."

63. As a practical matter, it is also unclear how the Rule applies to an individual who is "detransitioning," an increasingly common circumstance in which an individual who previously initiated a gender transition process either halts or reverses that process. It is presumptively illegal under the Rule to counsel someone who previously initiated or completed a gender transition process, but is now "attempting to change" his or her gender identity back to align with his or her biological sex. The Rule does not explain whether—and if so, why—affirming an individual seeking to *depart from* one's biological sex is <u>legal</u>, yet affirming an individual seeking to *align with* one's biological sex is <u>illegal</u>. The Rule appears to leave Wisconsin-licensed counselors with no instructions on which gender identity is the "default" in this difficult circumstance, let alone who makes this decision. But if counselors guess incorrectly, according to the Rule, they risk losing their license.

64. As these examples illustrate, the Rule fails to provide adequate warning of what speech is prohibited.

65. Consequently, the Rule is void.

66. The Rule is causing continuing and substantial harm to Plaintiffs by preventing them from each counseling in a manner consistent with their professional, faith-based mission.

## REQUEST FOR RELIEF

Plaintiffs therefore request the following relief:

A. Declare that the Rule violates the First and Fourteenth Amendments to the United States Constitution;

B. Enter an injunction permanently enjoining Defendants from enforcing the Rule;

C. Award attorney's fees to Plaintiffs as provided by 42 U.S.C. § 1988;

D. Award costs and any such further relief the Court deems appropriate.


Dated: May 12, 2026


Respectfully Submitted,

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

*/s/ Daniel P. Lennington*
Daniel P. Lennington (WI Bar No. 1088694)
Luke N. Berg (WI Bar No. 1095644)
Rebecca C. Furdek (WI Bar No. 1101543)

1241 North Franklin Place

Milwaukee, WI 53202
Phone: (414) 727-9455

Dan@will-law.org
Luke@will-law.org
Rebecca@will-law.org

*Attorneys for Plaintiffs*

Case 2:26-cv-00833    Filed 05/12/26    Page 16 of 20    Document 1

TERRI KOSCHNICK AND JOY BUCHMAN,

    Plaintiffs,

v.

TONY EVERS, DAN HERETH, JESSICA
BOWERS, CHRISTOPHER J. WEBSTER,
JOSHUA R. LEE, C. TERRANCE ERICKSON,
ANN GLAVAN, SHAWNA R. HANSEN, SHENG
LEE YANG, MARIETTA LUSTER, NICK M.
RAEF, ANDREA L. SIMON, TIM R. STRAIT, and
PATRICK STUMBRAS, each in their official
capacity,

    Defendants.

## VERIFICATION OF PLAINTIFF JOY BUCHMAN

1.     I am a Plaintiff in this case.

2.     I have personal knowledge of myself, my activities, my intentions, and my practice as a Licensed Professional Counselor, including those set out in the foregoing Verified Complaint. If called upon to testify, I would competently testify as to the matters relevant to me and my claims.

3.     I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint concerning myself, my activities, my intentions, and my practice are true and correct.

    Dated:   5/11/2026

Signature  _____

Printed Name:  ____Joy Buchman_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRI KOSCHNICK AND JOY BUCHMAN,

      Plaintiffs,

v.

TONY EVERS, DAN HERETH, JESSICA
BOWERS, CHRISTOPHER J. WEBSTER,
JOSHUA R. LEE, C. TERRANCE ERICKSON,
ANN GLAVAN, SHAWNA R. HANSEN, SHENG
LEE YANG, MARIETTA LUSTER, NICK M.
RAEF, ANDREA L. SIMON, TIM R. STRAIT, and
PATRICK STUMBRAS, each in their official
capacity,

      Defendants.

---

## VERIFICATION OF PLAINTIFF TERRI KOSCHNICK

---

1.    I am a Plaintiff in this case.

2.    I have personal knowledge of myself, my activities, my intentions, and my practice as a licensed Marriage and Family Therapist, including those set out in the foregoing Verified Complaint. If called upon to testify, I would competently testify as to the matters relevant to me and my claims.

3.    I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint concerning myself, my activities, my intentions, and my practice are true and correct.

Dated:    5- 9- 26

- 19 -

Signature _____

Printed Name: _____ *Terri Koschnick*